IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:19-CV-00149-BO

| | |
|---|---|
| **Volt Power, LLC**, Plaintiff, v. **William "Billy" Butts**, et al., Defendants. | **Order** |

Volt Power LLC asks the court to compel Defendants William "Billy" Butts and John Berkner and non-party C.W. Wright Construction Company, Inc. to turn over materials requested in discovery. Volt alleges the defendants took confidential trade secret information with them when they left for C.W. Wright, and then tried to cover their tracks.

The discovery requests at issue come in two forms. First, there are the requests for production Volt served on both Butts and Berkner. These requests seek the production of documents and the ability to search devices used by the defendants. Second, Volt seeks to enforce a subpoena to C.W. Wright, the company that employed the defendants right after their departure from Volt. The subpoena asks C.W. Wright to turn over various items that may show whether the defendants used Volt's information in their new jobs.

After reviewing the arguments and holding a hearing, the court will grant the motion in part and deny it in part. Berkner, who has not responded at all to Volt's request for production, must serve his responses promptly or face sanctions. Butts, however, need not supplement his responses because the motion against him is now moot because he no longer works for C.W.

Wright. And C.W. Wright must provide much of what the subpoena requests, but Volt may ultimately bear the costs associated with the production.

**I.  Background**

Volt Power, LLC is "an industry-leading provider" of overhead and underground utility construction, maintenance, and repair services including electrical, cable, and telecommunications. Compl. ¶8, D.E. 1. It builds, installs, repairs, inspects, and maintains electrical transmission and distribution power lines across the United States. *Id.* ¶¶8–9. As a large business, it takes significant steps to protect its trade secrets. *Id.* ¶10. Only certain Volt employees, "with a legitimate business need to access and use the information on Volt's behalf," can access Volt's trade secrets and confidential business information. *Id.* All Volt employees acknowledge Volt's policies about the use of its electronic systems, including that all communications made on Volt's network are the property of the company. *Id.* ¶¶10–11.

William "Billy" Butts began working for Volt Power, LLC as a First Class Lead Lineman beginning in January 2011. *Id.* ¶12. Volt promoted him in 2016 to Area Manager, and again the next year to Operations Director of the Mid-Atlantic Region. *Id.* In the director position, Butts learned Volt's trade secret information, including information about tools, services, and vendors; customer lists, preferences, orders, and volumes; sales and marketing strategies; pending projects and proposals; and detailed produce and service pricing information. *Id.* ¶13. Butts signed an Executive Common Unit Profits Unit Agreement, which included a noncompete clause and barred Butts's ability to solicit Volt employees for two years following any termination of employment. *Id.* ¶¶14, 16.

As part of a company reorganization, in June 2019, Volt removed Butts from his director position. *Id.* ¶19. It offered him a different position, but it was a step down from his director role.

*Id.* Rather than accept the new position, Butts resigned from the company. *Id.* Butts then got a job with C.W. Wright, one of Volt's direct competitors. *Id.* ¶15.

After he resigned, Volt says Butts transferred information about his Volt customers to a USB storage device. *Id.* ¶18. He also misappropriated company trade secrets by emailing information to his personal email account. *Id.* ¶¶23–25. After doing so, he deleted the emails from the "Sent Items" folder in his Volt email account. *Id.* ¶24.

John Berkner began working for Volt in October 2009 as a Division Manager. *Id.* ¶27. Berkner's role gave him access to Volt's trade secret information, the company's operations, and its customers' needs and preferences. *Id.* ¶¶28–29. Shortly after Butts left Volt, Berkner abruptly resigned. *Id.* ¶¶30, 32. Volt believes Butts recruited Berkner (and other employees) to go work with him for C.W. Wright. *Id.* ¶¶17, 32.

Volt claims that in the weeks and months before his departure, Berkner used personal USB storage devices to copy Volt's trade secrets and commercially sensitive business information without Volt's permission. *Id.* ¶¶34–38.

Volt has sued Butts and Berkner for conversion, breach of contract, and for violating the Computer Fraud and Abuse Act and the North Carolina Trade Secrets Protection Act. Compl. at 13–18. It believes that Butts is using its trade secrets and commercially sensitive business information to solicit Volt customers and compete with Volt unfairly. *Id.* ¶18.

As part of discovery, Volt served interrogatories and requests for production of documents on the defendants. Butts served answers to Volt's discovery requests in September 2019. D.E. 64 at 3. Berkner, who is proceeding *pro se*, responded to Volt's first set of interrogatories but did not respond to Volt's requests for production. *Id.* Volt took Butts's deposition in mid-September but could not take Berkner's deposition because he canceled his appearance the morning of. *Id.*

Volt then sought a preliminary injunction to obtain access to other devices and accounts that Butts and Berkner had access. *Id.* The court entered an Agreed Preliminary Injunction in February 2020 that allowed Volt to subpoena Butts's and Berkner's new employer, C.W. Wright. *Id.*

Volt served C.W. Wright with a subpoena in mid-March 2020. C.W. Wright responded in April but, according to Volt, "refused to produce any documents or Butts' and Berkner's company-issued devices." *Id.* at 4. Volt now seeks the court's help in accessing these documents.

**II.     Discussion**

The Federal Rules allow parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). The rules provide several tools, including requests for production, to obtain discovery from other parties. It also allows parties to obtain documents from non-parties through a subpoena.

While the federal rules provide mechanisms to allow a party to compel responses to requests for production and subpoenas, the standard to do so differs depending on the type of discovery at issue. So the court will first address the portion of Volt's motion dealing with requests for production and then move on to subpoena-related matters.

        **A.     Motion to Compel Responses from Butts and Berkner**

Volt served requests for production of documents on both Butts and Berkner. The company is dissatisfied with Butts's responses because he did not turn over various devices it requested. But as Butts no longer works for C.W. Wright, this request is moot. It also objects to Berkner's failure to respond at all. Berkner, in contrast to Butts, appears to continue to work for C.W. Wright. The

4

objection is well taken because even though Berkner is *pro se* he cannot avoid his discovery obligations. So the court will require him to respond or face sanctions.

Under the Federal Rules, a party may move to compel discovery when another party fails to produce documents. Fed. R. Civ. P. 37(a)(3)(B)(iv). The party resisting or objecting to discovery "bears the burden of showing why [the motion to compel] should not be granted." *Mainstreet Collection, Inc.* v. *Kirklands, Inc.*, 270 F.R.D. 238, 241 (E.D.N.C. 2010). To meet this burden, the non-moving party "must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law." *Id.*

With this standard in mind, the court turns to the merits of Volt's motions.

### 1. Request for Production to Butts

Volt seeks to compel Butts to turn over various equipment he possessed in connection with his job at C.W. Wright. Request for Production 16 asks Butts and Berkner to produce "all computers, tablets, portable storage devices (whether USB or otherwise) and/or cellular phones" in their possession, custody, and control to Volt's forensic analysis for imaging, analysis and preservation. D.E. 63–1 at 10, 19. And Request for Production 17 asks Butts and Berkner to produce "all external storage devices . . . including USB devices, external hard drives, or any other mass storage device for inspection and hard disk mirror/imaging." *Id.* at 11, 20.

The parties disputed whether Butts must turn over devices provided to him by C.W. Wright as part of his job. But at the hearing on this matter, the parties represented that Butts no longer worked for C.W. Wright and thus should not have any responsive materials in his possession, custody, or control. So the court denies Volt's motion to compel for Requests 16 and 17 as moot.

5

### 2. Requests for Production to Berkner

Berkner has not responded at all to Volt's requests for production. While *pro se* litigants are entitled to some deference from the court, his *pro se* status does not exclude him from timely responding in full to discovery. *See LaMonds* v. *Lake Ridge Parks & Recreation Ass'n*, Civil Action No. 1:18-CV-00442, 2018 WL 6537141, at *3 (E.D. Va. Dec. 12, 2018) (citing cases). Thus Berkner must respond to Volt's request.

### B. Motion to Compel C.W. Wright to Respond to Volt's Subpoena

Next, Volt asks the court to enforce the subpoena it served on C.W. Wright over the company's objection. The Federal Rules allow a party to subpoena a non-party during discovery for documents in the non-party's "possession, custody, or control." *See* Fed. R. Civ. P. 34(c), 45(a)(1)(A)(iii), 45(a)(1)(C). A non-party subpoena may seek information "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" *Id.* 26(b)(1); *see also Schaaf* v. *SmithKline Beecham Corp.*, 233 F.R.D. 451, 453 (E.D.N.C. 2005) ("Rule 45 adopts the standard [of discovery] codified in Rule 26[.]").

The recipient of a subpoena may respond in one of several ways. It may, of course, turn over the requested documents. But if it objects to the subpoena's terms, it may move to quash the subpoena. Fed. R. Civ. P. 45(d)(3). Alternately, the responding party may serve the party that sent the subpoena with an objection. *Id.* 45(d)(2)(B). The service of a timely objection relieves the subpoena's recipient of any duty to respond until the court requires it to do so. *Id.*

C.W. Wright served Volt with an objection raising several issues. D.E. 63–5. In general, C.W. Wright's objections focused on the breadth of the subpoena and the burden it would face in complying with the subpoena. The company claimed that there was no justification for allowing Volt, one of its competitors, to conduct a forensic analysis of its employees' equipment. Doing so

would be expensive, involve materials irrelevant to Volt's dispute with Butts and Berker, and require the production of confidential business information or trade secrets.

In deciding whether responding to a subpoena imposes an undue burden, courts may look at "factors such as relevance, the need for the documents, the breadth of the document request, the time period covered by such request, the particularity with which the documents are described, and the burden imposed." *United States* v. *Meridian Senior Living, LLC*, No. 5:16-CV-410-BO, 2018 WL 5723930, at *4 (E.D.N.C. Nov. 1, 2018) (quotations and citations omitted). The court recognizes that a non-party's status requires an "even more demanding and sensitive inquiry than the one governing discovery generally." *Virginia Dep't of Corr.* v. *Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (internal quotations and citation omitted).

C.W. Wright claims that it is inappropriate to allow one of its competitors to conduct a forensic examination of its equipment when Volt has not alleged that it engaged in any wrongful conduct. It also claims that it has provided a declaration from its CEO explaining that C.W. Wright's policies would not have allowed Butts or Berkner to store Volt's documents or information on its equipment. Volt counters that because of the defendants' history of secreting away Volt's information, the court should allow it to conduct a forensic examination to see if they transferred any Volt materials to their C.W. Wright equipment.

It is true, as C.W. Wright notes, that courts are skeptical of requests to conduct a forensic examination of a non-party's computer equipment. But a forensic analysis is appropriate because Butts has taken steps to hide and delete discoverable information in the past. *See, e.g.*, *Antioch Co.* v. *Scrapbook Borders, Inc.*, 210 F.R.D. 645, 652 (D. Minn. 2002) (allowing mirror imaging of a hard drive under Rule 34 to retrieve deleted computer records, including emails); *Simon Prop. Grp. L.P.* v. *mySimon, Inc.*, 194 F.R.D. 639, 640 (S.D. Ind. 2000) ("[C]omputer records, including

records that have been 'deleted,' are documents discoverable under Fed. R. Civ. P. 34."); *Playboy Enters.* v. *Welles*, 60 F. Supp. 2d 1050, 1053 (S.D. Cal. 1999) ("Plaintiff needs to access the hard drive of Defendant's computer only because Defendant's actions in deleting those e-mails made it currently impossible to produce the information as a 'document.'").

Granted, there is no indication that C.W. Wright has engaged in an any wrongful conduct. But Butts transferred confidential information from his Volt devices and then deleted evidence of the transfer. Volt only discovered his actions through forensic analysis. What's more, the Complaint alleges that Butts and Berkner used Volt's information in their new jobs. Compl. ¶ 39, D.E. 1. This is therefore a case in which forensic examination is justified based upon Butts's actions.

The court can mitigate any concerns about costs, overbreadth, or confidential information. The court has reviewed the subpoenas terms and will modify it in these ways:

- The term "Former Employees" will include only Butts and Berkner.

- In Plaintiff's Request for Production 6 to C.W. Wright, the court strikes the phrase "the Business" as its definition is overbroad and not proportional to the needs of the case. D.E. 63–4 at 12.

- C.W. Wright need not respond to Request for Production 9 because requiring the production of "any communications or other documents that reflect, relate, or refer to Volt Power from January 1, 2019 through present" is overbroad and not proportional to the needs of the case. *Id.* at 13.

- C.W. Wright need not respond to Request for Production 13, as the requested documents are not relevant to any party's claim or defense. *Id.* But C.W. Wright may need to supply similar documents to support a claim that other responsive documents qualify as confidential business information or trade secrets.

The court will also require the parties and C.W. Wright to meet and confer to develop a search protocol to govern the identification and production of responsive documents. Any search protocol must provide C.W. Wright with the ability to conduct a review for privileged materials or materials that constitute confidential business information or trade secrets. The parties and C.W.

8

Wright must also meet and confer to develop a protective order that allow C.W. Wright to produce responsive documents that contain confidential or trade secret information.

There are also two factors that mitigate concerns about the costs of responding to the subpoena. To begin with, Volt proposes having its forensic provider do much of the work related to identification and production of responsive documents. That arrangement would cut into the cost of responding to the subpoena.

What is more, Rule 45 also provides C.W. Wright with protection against excessive costs. Because Volt is seeking to enforce the subpoena over C.W. Wright's timely objection, the court "must protect" C.W. Wright "from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii).

In applying this Rule, courts have required the subpoenaing party to reimburse the responding party for "technology consulting fees as well as costs associated with collection, database creation, and, under certain circumstances, document review and privilege log preparation." The Sedona Conference, *Commentary on Rule 45 Subpoenas to Non-Parties* 30 (3d ed. Aug. 2020) (citing cases). Courts may also require the subpoenaing party to pay the attorneys' fees incurred by the responding party for production-related tasks. *Id.*

The court is unable to determine at this time whether production will lead to a "significant expense" that justifies cost shifting. That will depend on the search protocols agreed to by the parties and number of requests Volt continues to pursue. The court will defer addressing the scope and amount that C.W. Wright may recover from Volt until after it has completed production of responsive documents.

9

### III. Conclusion

For all these reasons, the court will grant Volt's Motion to Compel in part and deny it in part as described above.

The court orders as follows:

1. Berkner must serve responses to Volt's requests for production no later than 30 days after the entry of this order.
2. Berkner must contact Volt's counsel no later than 7 days after entry of this order to select a mutually convenient date for his deposition.
3. Within 30 days after entry of this order, the parties and C.W. Wright must meet and confer to discuss these issues:
   a. The terms of a search protocol that will apply to searches for documents responsive to the subpoena to C.W. Wright as well as searches of any technological devices produced by Berkner;
   b. The terms of a protective order that will govern the production of documents in this case;
   c. The potential costs associated with C.W. Wright responding to the subpoena; and
   d. A timeline for C.W. Wright to respond to the subpoena.
4. Volt may not access any technological devices produced by Berkner until the search protocol is set and the protective order entered.
5. Each party and C.W. Wright will bear their own costs in connection with this motion. The court defers any ruling on what amount, if any, C.W. Wright may recover from Volt for costs associated with responding to the subpoena.

The court will schedule a hearing to resolve any disputes over the search protocol and protective order, to set a timeline for production by Volt, and to discuss other discovery-related issues.

**The court advises Berkner that if he does not comply with this order, the court is likely to sanction him. These sanctions could include the court entering a default and default judgment against him.**

Dated: October 1, 2020

_____
Robert T. Numbers, II
United States Magistrate Judge